UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
MARTIN A. GROMULAT,
              Plaintiff,

v.

CYNTHIA WYNN, KELLY DARROW,
KATHY PANDEKAKES, and HUMAN
DEVELOPMENT SERVICES OF
WESTCHESTER,
              Defendants.
--------------------------------------------------------------x

**OPINION AND ORDER**

20 CV 10490 (VB)

Briccetti, J.:

    Plaintiff Martin A. Gromulat brings this action against defendants Cynthia Wynn, Kelly Darrow, Kathy Pandekakes, and Human Development Services of Westchester ("HDSW"), alleging employment discrimination in violation of the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Family and Medical Leave Act, and the New York State Human Rights Law.

    Now pending is defendants' motion to enforce a settlement agreement between the parties and dismiss plaintiff's second amended complaint.  (Doc. #40).

    For the following reasons, the motion is GRANTED.

    The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

    Plaintiff was employed by defendant HDSW.  Plaintiff alleges he was subject to disability discrimination and unlawfully terminated on November 26, 2018.  (Doc. #38 ("SAC") ¶ 36).

    Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on August 13, 2019.  (SAC ¶ 39; see Doc. #38-3).

1

Plaintiff and HDSW participated in mediation conducted by the EEOC on December 5, 2019. (SAC ¶ 40). Plaintiff was represented by attorney V. Jonas Urba, Esq. (Doc. #42 ("Saccomano Aff.") ¶ 5).

At the mediation, the parties reached a settlement and executed a Confidential Negotiated Term Sheet. (Doc. #42-2 ("Term Sheet")). The Term Sheet provides:

> 1. The parties . . . desire to settle this action without further litigation.
>
> 2. The parties agree that [plaintiff] will not institute a lawsuit regarding the above-referenced Charge, and that this matter is settled.
>
> 3. The settlement will be formally memorialized in a more detailed Confidential Negotiated Settlement Agreement, with General Release ("Settlement Agreement"), to be prepared by counsel for [HDSW] and sent by e-mail to [plaintiff]'s counsel no later than December 12, 2019.
>
> 4. [Plaintiff] acknowledges that he has been advised to consult with an attorney and has been given a reasonable time to consider the agreement before signing.

(Id. ¶¶ 1–4). In addition, HDSW agreed to pay plaintiff $27,500, inclusive of attorney's fees and costs, within thirty days of the execution of the formal Settlement Agreement. (Id. ¶ 5(a)). One-third was to be paid to Mr. Urba and the balance to plaintiff. (Id.). Further, plaintiff agreed to maintain confidentiality, and HDSW agreed to provide him a neutral employment reference. (Id. ¶ 5(b)–(c)).

In accordance with the Term Sheet, HDSW provided plaintiff with a draft final agreement. Negotiations over the language of that final agreement ensued.

On January 17, 2020, HDSW's counsel provided a revised draft final agreement to plaintiff and Mr. Urba. In his cover email, HDSW's counsel explained:

> Attached is the revised settlement agreement. The Agency has excepted [sic] all of your requested changes except for those in paragraph 13. With regard to paragraph 12 which addresses Mr. Gromulat's entry into the Agency's offices, it is the standard advice of our Firm that a former employer not allow that access. However, in this matter, we have tried to balance that concern and preserving Mr. Gromulat's

2

ability to pursue his current employment and NHMA board involvement. Please return executed originals of this Settlement Agreement and the EEOC's agreement to me.

(Doc. #38-4 at ECF 3).[1]

Plaintiff responded by email that he "hereby revoke[s] any acceptance of this agreement." (Doc. #38-4 at ECF 3). He further clarified he "w[ould] not take any further action concerning this matter until [he] hear[d] back from the Mediator regarding [his] serious concerns." (Id. at ECF 2).

Plaintiff offers two versions of what caused the breakdown in negotiations and what happened next.

First, according to the second amended complaint, plaintiff signed a settlement agreement but defendants refused to sign the agreement or to pay him the agreed-upon amount. (SAC ¶ 40).[2] As a result, the EEOC mediator concluded no settlement was reached and plaintiff's case was referred for further investigation, which culminated in the issuance of a right-to-sue letter. (Id. ¶ 41; see Doc. #38-1).

Second, according to different portions of the second amended complaint as well as plaintiff's opposition to the instant motion, plaintiff did not believe the Term Sheet was a final agreement because it did not provide for what he understood to be a material term: his continued

---

[1] "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

[2] Plaintiff alleges "[a] settlement agreement was signed by Plaintiff and not by Defendants without any legal justification. Defendants refuse to pay him and are in breach of the agreement." (SAC ¶ 40). As the Term Sheet is signed by both plaintiff and HDSW, as well as their counsel, the Court assumes plaintiff is referring to a subsequent draft of the final settlement agreement not presented to the Court.

3

access to HDSW's offices to continue to service his clients there.  (SAC ¶¶ 45–52; Doc. #46, at 2).

Defendants offer a third variation on these events.  They say negotiations about the language of the final Settlement Agreement "eventually broke down after Plaintiff insisted he be allowed to return to Defendants' premises without an appointment and without providing Defendants with prior notice."  (Saccomano Aff. ¶ 11).  Plaintiff then fired Mr. Urba, who asserted a lien over the settlement funds.  (Id. ¶¶ 13–14).  Defendants' counsel "asked Plaintiff to resolve the lien with Mr. Urba so that the settlement amount could be paid," but no resolution was reached.  (Id. ¶¶ 15–17).

Plaintiff thereafter commenced this action.

## DISCUSSION

I.    Legal Standard

"A settlement agreement is a contract that is interpreted according to general principles of contract law."  Powell v. Omnicom, 497 F.3d 124, 128 (2d Cir. 2007).[3]

During the settlement process, as in other commercial transactions, parties sometimes sign preliminary agreements before executing final documents.  See McNamara v. Tourneau, Inc., 464 F. Supp. 2d 232, 237 (S.D.N.Y. 2006).  A preliminary agreement that provides for the execution of a subsequent formal agreement may be either "a binding contract or an

---

[3]    The Second Circuit has not yet determined "whether federal common law or state law governs the evaluation of putative contracts settling federal claims being adjudicated in New York," but it has observed that the two bodies of law are "materially indistinguishable."  In re Lehman Bros. Holdings Inc., 739 F. App'x 55, 56 n.1 (2d Cir. 2018) (summary order).  Accordingly, the Court looks to both federal common law and New York law to decide this motion.

Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

unenforceable agreement to agree." Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc., 145 F.3d 543, 547 (2d Cir. 1998).

A preliminary agreement in the first category, that is, a "binding contract," is enforceable even if the parties fail to finalize the subsequent formal agreement. Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc., 145 F.3d at 548. The Second Circuit has adopted a four-factor test to determine whether a preliminary agreement is fully binding:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

Id. at 549 (quoting Winston v. Mediafare Ent. Corp., 777 F.2d 78, 80 (2d Cir. 1985)). Between the so-called "Winston factors," the first factor "is frequently the most important." Brown v. Cara, 420 F.3d 148, 154 (2d Cir. 2005). However, "[n]o single factor is decisive." Ciaramella v. Reader's Digest Ass'n, 131 F.3d 320, 323 (2d Cir. 1997).

District courts may enforce a preliminary settlement agreement "summarily, although the Court naturally assumes that an evidentiary hearing would be necessary if there were a genuine issue as to a material fact." Ji Hyun Lee v. Hosp. for Special Surgery, 2009 WL 2447700, at *1 (S.D.N.Y. Aug. 11, 2009).

II.   Analysis

Defendants contend the Term Sheet is a binding preliminary agreement that can and should be enforced as a matter of law.

The Court agrees.

The balance of Winston factors weighs in favor of finding the Term Sheet is a binding preliminary agreement.

First, and most importantly, there was no express reservation of the right not to be bound in the absence of a final, signed writing. To the contrary, the Term Sheet unequivocally states "[t]he parties agree . . . that this matter is settled." (Term Sheet ¶ 2). "[T]he presumption that a preliminary agreement was not intended to be binding because of a provision providing for the execution of a future agreement is overcome where, as here, the preliminary agreement contains express indication of commitment." Deutsche Bank Sec. Inc. v. Kingate Glob. Fund Ltd., 2021 WL 1163715, at *8 (S.D.N.Y. Mar. 26, 2021). Thus, this factor weighs strongly in favor of enforcement.

Second, there was partial performance of the Term Sheet. Namely, defendants sent a draft Settlement Agreement to plaintiff and his counsel in accordance with the Term Sheet. See, e.g., Acun v. Merrill Lynch, Pierce, Fenner & Smith, 2020 WL 995887, at *3 (S.D.N.Y. Mar. 2, 2020) (defendant's provision of draft agreement to plaintiff "slightly favors enforcement" of a settlement reached at a settlement conference and recited on the record), aff'd on other grounds, 852 F. App'x 552 (2d Cir. 2021) (summary order). The Court notes, however, that this factor weighs only slightly in favor of enforcement considering no other aspect of the Term Sheet was performed. For example, plaintiff disclosed the terms of the settlement in his pleadings, notwithstanding the confidentiality provision in the Term Sheet, and continues to litigate his discrimination claims.

Third, all material terms of the settlement were agreed upon in the Term Sheet. This factor weighs in favor of settlement enforcement when "there [i]s literally nothing left to negotiate," even "minor or technical" points. Winston v. Mediafare Ent. Corp., 777 F.2d at 82. However, a preliminary agreement is still "binding and conclusive . . . even if a party has a change of heart between the time of the agreement to the terms of the settlement and the time it

6

is reduced to writing." Elliot v. City of New York, 2012 WL 3854892, at *2 (S.D.N.Y. Sept. 5, 2012).

Plaintiff argues in his opposition brief the parties did not agree on the parameters of his continued access to HDSW's office, and this disagreement precludes enforcement of the Term Sheet. This argument is unavailing. For one, plaintiff's allegations in the second amended complaint and the emails annexed thereto reflect plaintiff understood the Term Sheet was a binding settlement agreement. (See SAC ¶ 40; Doc. #38-4). For another, plaintiff's changing theories of his case suggests he simply "ha[d] a change of heart between" signing the Term Sheet and reviewing HDSW's drafts, which does not change the binding nature of the Term Sheet.

The fourth factor, "whether the agreement at issue is the type of contract that is usually committed to writing," weighs slightly against enforcement. Settlement agreements are typically reduced to formal writings. Ciaramella v. Reader's Digest Ass'n, 131 F.3d at 326. That said, courts may consider "the complexity of the underlying agreement" in analyzing this factor. Id. Here, the underlying agreement is a simple settlement of one employee's discrimination claims against his employer, and thus this factor does not weigh strongly either way.

Three of the four Winston factors weigh in favor of enforcement, including the first—and "most important"—factor. Thus, the Court concludes the Term Sheet is a binding settlement agreement.

Accordingly, defendants' motion to enforce the settlement must be granted. Plaintiff's claims are dismissed with prejudice and the parties are directed to perform the agreement.[4]

## CONCLUSION

Defendants' motion to enforce the parties' settlement agreement and dismiss the second amended complaint is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #40) and close this case.

Dated: February 14, 2022
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge

---

[4] Defendants also request the Court "rule that Defendants can make the settlement payment to Plaintiff and his former attorney as stated in the Term Sheet." (Doc. #41, at 1–2). This request is denied. To the extent the parties are unable to resolve where defendants should send the settlement payment and Mr. Urba's lien on their own, they may request relief in the appropriate venue, which is not this Court. Cf. Brettschneider v. City of New York, 2020 WL 5984340, at *5–16 (E.D.N.Y. Aug. 25, 2020) (federal court lacked ancillary or supplemental jurisdiction over fee dispute among plaintiff's counsel when prior counsel did not file a charging lien or notice of appearance), report and recommendation adopted, 2020 WL 5981681 (Oct. 8, 2020).